JOHNNY PAGE, APPELLANT, v. THE STATE
OF NEVADA, RESPONDENT.

No. 6651

March 30, 1972                           495 P.2d 356

*Robert G. Legakes,* Public Defender, and *John C. Ohrenschall,* Deputy Public Defender, Clark County, for Appellant.

*Robert List,* Attorney General, Carson City; *Roy A. Woofter,* District Attorney, and *Rex A. Bell,* Deputy District Attorney, Clark County, for Respondent.

---

## OPINION

By the Court, MOWBRAY, J.:

The appellant, Johnny Page, was charged in the district court with burglary. He was tried to a jury and convicted. He has appealed from the judgment of conviction, asserting several assignments of error, which we find meritless. Therefore, the judgment is affirmed.

1.   The victim of the burglary, Elmer W. Kelter, Jr., upon reporting for duty at Nellis Air Force Base in Clark County, was assigned temporary off-base quarters at the Moulin Rouge Hotel in nearby Las Vegas. Kelter parked his car on the hotel parking lot. In the early morning hours of June 22, 1969, Witness Jack B. Anderson, while waiting for transportation to Nellis, saw two men pass through the parking lot toward Kelter's car. Anderson identified one of the men as Appellant Page. He did not, at first, see the men near Kelter's car, as his vision to the car was partially obscured by a camper truck parked adjacent to it. While the men were out of sight and apparently near Kelter's car, Anderson heard a distinct clicking noise. The dome light then came on in Kelter's car, and Anderson saw Page ". . . reaching over the seat and removing clothing from a clothing rod in the back seat of the car." Anderson then observed Page and his companion leave Kelter's car with their

arms full of clothing. Anderson returned to the hotel and told the desk clerk to call the police. While he was doing this, he lost sight of the men for a minute or so; then, as he watched from the hotel office, they came back into his line of vision. At this point the police arrived. Officers Howard Oren and James Kelly arrested Page and his companion. Oren testified at the trial that, as he and Kelly approached the area, Page and his companion threw two objects under a nearby pickup truck. The objects were retrieved, and they were found to be a pair of pliers and a knife. At trial, the State claimed that the knife was used to gain entry to Kelter's two-door, hardtop vehicle.

2. The burglary occurred on June 22, 1969 (and, it is conceded, in the daytime). Page argues that he cannot be guilty of burglary committed in the daytime because there was no such crime in June 1969. We do not agree.

The history of the burglary statute commences with the first regular session of the Legislative Assembly of the Territory of Nevada in 1861. Section 59 of chapter 28 of the 1861 Laws of Nevada Territory defined burglary as a nighttime offense.[1] The crime was punishable by imprisonment in the Territorial Prison for not less than 1 nor more than 10 years. In 1873, the Nevada State Legislature added "day-time" burglary as a crime, characterized "housebreaking," and set the penalty therefor at not less than 1 nor more than 5 years.[2] In 1909, the Nevada Legislature amended the burglary statute to provide for degrees of

[1]Act of Nov. 26, 1861, ch. 28, § 59 [1861] Laws Nev. Territory 66 (Gillespie 1862):

"SEC. 59. Every person who shall in the night-time forcibly break and enter, or without force (the doors and windows being open), enter into any dwelling-house, or any other house whatever, or tent, with intent to commit murder, robbery, rape, mayhem, larceny, or other felony, shall be deemed guilty of burglary, and upon conviction thereof, shall be punished by imprisonment in the Territorial Prison, for a term not less than one, nor more than ten years."

[2]Act of Mar. 7, 1873, ch. 76, § 1 [1873] Stats. Nev. 144:

"SECTION 1. Section fifty-nine of said Act [(1861) Laws Nev. Territory 66 (Gillespie 1862)] is amended so as to read as follows:

"Section Fifty-nine. Every person who shall, in the night-time, forcibly break and enter, or without force (the doors or windows being open), enter into any dwelling house, or tent, or any other house or building whatever, or any vessel, water craft, railroad, passenger, or freight car, with intent to commit murder, robbery, rape, mayhem, grand larceny, petit larceny, or any felony, shall be deemed guilty of burglary, and, on conviction thereof, shall be punished by imprisonment in the State Prison for a term not less than one nor more than ten

burglary: Nighttime, or first-degree, burglary, carrying a penalty term of not less than 1 nor more than 15 years' imprisonment; daytime, or second-degree, burglary, carrying a penalty term of not more than 5 years' imprisonment.[3] In 1967, the Legislature amended the burglary statute by decreasing the disparity in the penalty provisions between first- and second-degree burglary. Act of March 29, 1967, ch. 211, § 138 [1967] Stats. Nev. 494, *amending* NRS 205.060.[4] The following year, the Legislature did away with the distinction between first- and second-degree

---

years. Whenever such burglary is committed upon a railroad train, in motion or in rest, in this State, and it cannot with reasonable certainty be ascertained in what county said crime was committed, the offender may be arrested and tried in any county through which said railroad train may have run. Every person who, *in the day-time,* shall enter any dwelling house, shop, warehouse, depot, store, mill, barn, stable, outhouse, other building, vessel, or railroad passenger or freight car, with intent to steal, or to commit any felony whatever therein, *is guilty of housebreaking,* and, on conviction, shall be punished by imprisonment in the State Prison for not less than one nor more than five years. Night-time, as in this section named, means the period between sunset and sunrise. If housebreaking be committed upon any railroad train, in motion or in rest, in this State, and it cannot with reasonable certainty be ascertained in what county said crime was committed, the offender may be arrested and tried in any county through which said railroad train may have run." (Emphasis added.)

[3]Act of Feb. 20, 1909, ch. 27, § 1 [1909] Stats. Nev. 25:
"SECTION 1. Section fifty-nine of said Act [(1861) Laws Nev. Territory 66 (Gillespie 1862)] is hereby amended to read as follows:
"Section 59. Every person who enters any house, room, apartment, tenement, shop, warehouse, store, mill, barn, stable, outhouse, or other building, tent, vessel, or railroad car, with intent to commit grand or petit larceny, or any felony, is guilty of burglary.
"Every burglary committed in the night-time is burglary of the first degree, and every burglary committed in the daytime is burglary of the second degree.
"Burglary of the first degree is punishable by imprisonment in the State Prison for not less than one nor more than fifteen years.
"Burglary of the second degree is punishable by imprisonment in the State Prison for not more than five years.
"Whenever burglary is committed upon a railroad train, in motion or in rest, in this State, and it cannot with reasonable certainty be ascertained in what county said crime was committed, the offender may be arrested and tried in any county through which said railroad train may have run.
"The phrase 'night-time,' as used in this section, means the period between sunset and sunrise."

[4]Act of March 29, 1967, ch. 211, § 138 [1967] Stats. Nev. 494:
"SEC. 138. NRS 205.060 is hereby amended to read as follows:
"205.060 1. Every person who enters any house, room, apartment, tenement, shop, warehouse, store, mill, barn, stable, outhouse or other building, tent, vessel, vehicle, vehicle trailer, semitrailer or housetrailer,

burglary and provided that "[a]ny person convicted of burglary shall be punished by imprisonment in the state prison for not less than 1 year nor more than 10 years." Act of Feb. 26, 1968, ch. 22, § 3 [1968] Stats. Nev. 45–46.[5]

The Legislature did not, as Page would have us believe, delete from the burglary statute burglary perpetrated during the daytime. To make it clear that there was no such intendment, the 1971 Legislature amended the burglary statute again, by inserting the phrase "either by day or night," in subsection 1 of NRS 205.060.[6]

---

or railroad car, with intent to commit grand or petit larceny, or any felony, is guilty of burglary.

"2. 'Nighttime' as used in this section means the period between sunset and sunrise.

"3. Every burglary committed in the nighttime is burglary of the first degree. Burglary of the first degree is punishable by imprisonment in the state prison for not less than 1 nor more than [15] *12* years.

"4. Every burglary committed in the daytime is burglary of the second degree. Burglary of the second degree is punishable by imprisonment in the state prison for not *less than 1 year nor* more than [5] *10* years.

"5. Whenever burglary is committed upon a railroad train, vehicle, vehicle trailer, semitrailer or housetrailer, in motion or in rest, in this state, and it cannot with reasonable certainty be ascertained in what county the crime was committed, the offender may be arrested and tried in any county through which the railroad train, vehicle, vehicle trailer, semitrailer or housetrailer may have run on the trip during which such burglary is committed." (Brackets and emphasis in original, indicating, respectively, deleted and new wording.)

[5]Act of Feb. 26, 1968, ch. 22, § 3 [1968] Stats. Nev. 45–46:
"SEC. 3. NRS 205.060 is hereby amended to read as follows:
"205.060 1. Every *person who* enters any house, room, apartment, tenement, shop, warehouse, store, mill, barn, stable, outhouse or other building, tent, vessel, vehicle, vehicle trailer, semitrailer or housetrailer, or railroad car, with intent to commit grand or petit larceny, or any felony, is guilty of burglary.

"2. *Any person convicted of burglary shall be punished* by imprisonment in the state prison for not less than 1 year nor more than 10 years. [Emphasis in original.]

"3. Whenever burglary *is committed* upon a railroad train, vehicle, vehicle trailer, semitrailer or housetrailer, in motion or in rest, in this state, and it cannot with reasonable certainty be ascertained in what county the crime was committed, the offender may be arrested and tried in any county through which the railroad train, vehicle, vehicle trailer, semitrailer or housetrailer may have run on the trip during which such burglary is committed."

[6]Act of April 25, 1971, ch. 547, § 1 [1971] Stats. Nev. 1161–1162:
"SECTION 1. NRS 205.060 is hereby amended to read as follows:
"205.060 1. Every person who, *either by day or night,* enters any house, room, apartment, tenement, shop, warehouse, store, mill, barn, stable, outhouse or other building, tent, vessel, vehicle, vehicle trailer,

3.  Page claims the court erred in admitting Anderson's testimony because Anderson testified on direct examination that Page was wearing at the time of his arrest a white T-shirt, dark-colored slacks, and a beret-type cap or hat. On cross-examination, Anderson admitted that he had signed a statement for the police that Page was wearing tan or light-colored slacks. While Page's argument is not clear, it appears to be his position now that this so-called discrepancy in the testimony regarding the color of Page's slacks rendered Anderson's identification of Page inadmissible. Any discrepancy went only to the weight and not to the admissibility of Anderson's testimony. See Collins v. State, 88 Nev. 9, 492 P.2d 991 (1972).

4.  Finally, Page complains that the court erred in admitting into evidence the pliers and knife found under the pickup truck. Officer Oren testified that, as he approached Page and his companion, he saw them throw two objects under the pickup truck. Page later admitted at trial that he was the one who threw the pliers and knife under the truck. It was not error to receive the two items in evidence.

The judgment of conviction is affirmed.

Zenoff, C. J., and Batjer, Thompson, and Gunderson, JJ., concur.

semitrailer or housetrailer, or railroad car, with intent to commit grand or petit larceny, or any felony, is guilty of burglary. [Emphasis in original.]
"2.  . . . [No change; same as in 1968 Act, *supra*.]
"3.  . . . [No change; same as in 1968 Act, *supra*.]"